IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO RAMOS-LARA, | : | CIVIL ACTION NO. **3:CV-11-0782** |
| Petitioner, | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| THOMAS R. DECKER, et al., | : | |
| Respondents. | : | |

### REPORT AND RECOMMENDATION

**I. Procedural History.**

On March 22, 2011, Petitioner, Pedro Ramos-Lara, a detainee of the Bureau of Immigration and Customs Enforcement ("ICE"), at the York County Prison ("YCP"), York, Pennsylvania, filed, through counsel, an 8-page singled spaced, typed Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).[1] Petitioner did not attach any exhibits to his Habeas Petition. Petitioner paid the filing fee. On April 26, 2011, the Court issued a show cause order to Respondents. (Doc. 8). Petitioner basically claims that his continued detention by ICE at YCP since March 16, 2011, without a custody hearing violates his constitutional rights, and he seeks the Court to order ICE to conduct a custody hearing showing that his continued detention is justified.

Named as Respondents are YCP Warden Mary Sabol, Eric Holder, U.S. Attorney General, Thomas Decker, BICE District Director, John P. Torres, Acting Assistant Secretary of

---

[1]This Court has venue and jurisdiction with respect to Petitioner's habeas petition challenging his continued physical custody by ICE in the Middle District of Pennsylvania. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (finding that a petition pursuant to 28 U.S.C. § 2241 challenging an alien's present physical custody in the United States should be filed in the district where the petitioner is confined). Petitioner incorrectly captions his habeas petition in the Eastern District of PA and he incorrectly states that venue is in the Eastern District of PA. (Doc. 1, pp. 1 & 3).

BICE, and Janet Napolitano, Secretary of DHS. (Doc. 1).[2]

On May 16, 2011, Respondents filed their Response to the Habeas Petition, with attached exhibits, including unpublished court opinions. (Docs. 15, 15-1 to 15-4). Respondents state that Petitioner's habeas petition is moot since he challenges his pre-final removal order detention under 8 U.S.C. §1226(c) and he is now subject to a final removal order. As such, Respondents state that Petitioner's current detention is authorized under §1231(a). Respondents also state that, since Petitioner's 90-day removal period only recently started on April 29, 2011, his detention is mandatory under §1231(a)(2) and he is not entitled to a bond hearing.

Petitioner did not file a Traverse. Petitioner's Habeas Petition is now ripe for disposition.[3]

As discussed below, we agree with Respondents.

**II. Factual Background.**

Petitioner states that he has now been detained by ICE at YCP since March 16, 2011. (Doc. 1, p. 5). At the time of filing his habeas petition, Petitioner was detained by ICE for about one (1) week, and he is still currently being detained by ICE, now a total of about 3 months. Also, at the time Petitioner filed his present §2241 habeas petition, he was not subject to a final removal order.

Petitioner is a native and citizen of Mexico. (Doc. 1, p. 4). Petitioner entered the United States "illegally in 1993" without inspection or admission. (*Id*.). (Doc. 15-2). On

---

[2]Mary Sabol , Warden at YCP, was properly named as a Respondent since Petitioner is confined at YCP, and as Respondents note (Doc. 15, p. 1, n.1), she is the only proper Respondent with respect to Petitioner's habeas petition. *See* 28 U.S.C. §§ 2242 and 2243. *See also Jado v. Decker*, 2009 WL 1456595, *1, n. 1 (M.D. Pa.)("The only properly named Respondent in a federal habeas corpus action is the applicant's custodial official."); *Vardan v. Lowe*, 2011 WL 1481356, *1 (M.D. Pa. 2-24-11) approved by 2011 WL 1481357 (M.D. Pa. 4-19-11).

[3] We have been assigned this case for issuance of an R&R.

April 17, 1995, Petitioner pled guilty to possessing 1.2 grams of cocaine with intent to distribute in the Adams County Court of Common Pleas. (Doc. 15-1). Petitioner was sentenced to 3 to 23 months in Adams County Prison. (*Id*.).

On December 31, 1999, Petitioner married Amanda Gebhart, a citizen of the United States. (Doc. 1, p. 4). Gebhart submitted "a spousal immigrant petition on [Petitioner's] behalf, to bestow upon him the status of a US permanent resident." (*Id*.). The stated petition was returned for insufficient fee, and it was resubmitted on July 18, 2001. (*Id*.).

On July 3, 2000, Petitioner pled *nolo contendere* to receiving stolen property in the Adams County Court of Common Pleas. (Doc. 15-1, p. 4). Petitioner was sentenced to 24 months in the Intermediate Punishment Program. (*Id*.).

On April 25, 2005, Petitioner pled guilty in the Adams County Court of Common Pleas to having an accident involving an attended vehicle and driving under suspension. (Doc. 15-1, p. 6). Petitioner was sentenced to a period of probation for 12 months and directed to pay a fine. (*Id*.).

On September 14, 2007, Petitioner filed an application for permanent residency in the United States, based on his marriage to a United States citizen, under §245 (i) of the INA. (Doc. 1, p. 4). Petitioner states that even though he was inadmissible, "he is eligible to adjust his status, however, to permanent resident pursuant to section 245(i) of the Act." (*Id*.). Petitioner then avers as follows:

> 19. Nonetheless, respondent DHS denied his application for adjustment of status, noting that he did not have an immigrant petition filed before April 30, 2001. But this is erroneous, however, since Petitioner was the beneficiary of a espousal petition filed on April 26, 2001, as indicated in the receipt notice. This receipt clearly lists the amount of payment received, and supports the contention that the application was "approvable when filed." Respondent DHS has offered no evidence to show that the Petition was not then approvable. In fact, the same receipt number (EAC-01-247-51371) is attached to an approval notice dated January 7, 2001. This receipt clearly reflects a DHS' error in inputting the priority date as the "receipt date" (Aug from the original receipt, rather than the date of filing. Nevertheless, the I-130 was clearly filed before April 30, 2001 and is therefore valid for purposes of determining eligibility under Section 245(i).

20. Form I-1601, Application for Waiver of Grounds of Excludability was filed contemporaneously with Petitioner's adjustment application, in order to waive any other applicable grounds of excludability.

(*Id.*, ¶'s 19-20).

Subsequently, Petitioner alleges as follows:

21. On March 6, 2008, the DHS denied Petitioner's *Application for Waiver of Grounds of Excludability* concluding that Petitioner failed to meet the burden of proving extreme hardship to his US citizen spouse and minor child, as that term is applied in this case.

22. On April 4, 2008, Petitioner filed an appeal from the denial of wavier to the DHS, which in turn forwarded the appeal to the Administrative Appeals Office (AAO) on May 28, 2009.

23. On August 13, 2010, AAO upheld the DHS' decision denying the waiver, on the ground, not because he had failed to prove extreme hardship, but because he entered illegally without inspection pursuant to section *212(a)(6)(A)(i)*, and is not qualified for the benefits exception under *245(i)* of the Act.

24. The AAO sustained the findings of the DHS that the Form I-130 petition submitted on behalf of Petitioner on April 26, 2001 was rejected and returned to Petitioner because it was not properly signed, and therefore, not properly filed before April 30, 2001 as required by *section 245(i)*. Moreover, it noted that the Form I-130 petition was filed a second time with the DHS on July 18, 2001, beyond April 30, 2001, and therefore, Petitioner was ineligible to apply for adjustment of status under section *245(i)*.

25. On December 30, 2010, Petitioner filed a Petition for Declaratory and Injunctive Relief with the U.S. District Court for the Eastern District of Pennsylvania, challenging his removal by the DHS, on the ground that the latter acted with abuse of discretion, and therefore, in violation of the Administrative Procedures Act. He asserts that with the filing of Form I-130, Petition for Immigrant Relative, on April 26, 2001, Petitioner had acquired a "grand fathered" status, because he is a derivative spouse of a US citizen at t he time of filing, and he had an "approvable, meritorious, and non-frivolous" petition, which are requisites to qualify for adjustment under section *245(i)* of the Act. In view thereof, he is therefore eligible for adjustment of status.

(*Id.*, p. 5, ¶'s 21-25).[4]

On March 16, 2011, ICE took Petitioner into custody at YCP and served Petitioner with a Notice of Intent to Issue a Final Administrative Removal Order ("FARO"), pursuant to

---

[4]Respondents noted that as of the date they filed their Response in our case (*i.e.* May 16, 2011) Petitioner's action he filed in the Eastern District of Pennsylvania was still pending. (Doc. 15, p. 3, n. 2). Petitioner also indicates that his above stated action is pending with the Eastern District of Pennsylvania. (Doc. 1, p. 7, ¶ 34).

8 U.S.C. §1228(b), charging him with being subject to removal, under INA §237(a)(2)(A)(iii), for being convicted of an aggravated felony. (Doc. 15-2). Respondents state that "[t]hough [Petitioner] indicated he wanted to contest removal, he did not submit any rebuttal evidence, and on April 29, 2011, ICE issued a final administrative removal order." (Doc. 15, p. 3 & Doc. 15-3). The Final Administrative Removal Order ICE issued on April 29, 2011, against Petitioner stated as follows:

> Based upon the allegations set forth in the Notice of Intent to Issue a Final Administrative Removal Order and evidence contained in the administrative record, I, the undersigned Deciding Officer of the Department of Homeland Security, make the following findings fo fact and conclusions of law. I find that you are not a citizen or national fo the United States and that you are not lawfully admitted for permanent residence. I further find that you have a final conviction for an aggravated felony as defined in section 101(a)(43)(B) of the Immigration and Nationality Act (Act) as amended, 8 U.S.C. 1101(a)(43)(B), and are ineligible for any relief from removal that the Secretary of Homeland may grant in an exercise of discretion. I further find that the administrative record established by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii). By the power and authority vested in the Secretary of Homeland Security, and in me as the Secretary's delegate under the laws of the United States, I find you deportable as charged and order that you be removed from the United States to Mexico or to any alternative country prescribed in section 241 of the Act.

(Doc. 15-3).

As stated, on March 22, 2011, prior to the FARO, Petitioner filed his instant § 2241 habeas petition, claiming that he is entitled to a bond hearing in which the government must show that his continued detention is justified.

Petitioner's habeas petition is presently pending before this Court.

**III. Claim of Habeas Petition.**

Petitioner essentially raises one claim, namely that his continued detention by ICE at YCP since March 16, 2011, without "a constitutionally adequate [bond] hearing to determine whether his detention is justified," is unlawful, and he seeks a hearing in which the government must show that his continued detention is justified. (Doc. 1, pp. 7-8). Petitioner claims that the INA "does not authorize his prolonged detention without such a hearing." (*Id.*, p. 7). Petitioner states that his continued indefinite detention by ICE is under § 1226(c) and that it is not authorized without a hearing. Petitioner contends that even if

§ 1226(c) did authorize his prolonged mandatory detention, it violates due process based, in part, on *Madrane v. Hogan,* 520 F. Supp. 2d 654, 667 (M.D. Pa. 2007).   (*Id*.).

Petitioner also claims that Respondents violated his due process rights by detaining him without opportunity for a bond hearing and by failing to give him an adequate hearing to address whether he should be released from custody.

We now give consideration to the Habeas Petition, Respondents' Response, along with the exhibits submitted by Respondents, and we find that the Petition should be denied.

**IV. Discussion.**

As mentioned, Petitioner claims that his continued detention by ICE since March 16, 2011 without a bond hearing is unconstitutional.  This Court has §2241 habeas jurisdiction over Petitioner's claim that his continued detention by ICE is unlawful.  *See Leslie v. Attorney General of U.S.,* 2010 WL 381609, *1, n. 1 (3d Cir.)(Non-Precedential)(citation omitted).

Respondents initially have shown that Petitioner's removal order became final on April 29, 2011, after Petitioner filed his habeas petition.  (Doc. 15-3).  As stated, when Petitioner filed his habeas petition, he was not yet subject to a final removal order.   Thus, as Respondents state, Petitioner's detention by ICE at YCP is now authorized by 8 U.S.C. §1231(a) and not under §1226(c), as it was when Petitioner filed his habeas petition.

Respondents correctly state that the ICE decision of April 29, 2011 was an administratively final order of removal for the purposes of calculating Petitioner's period of post-order detention under 8 U.S.C.§ 1231(a)(1), and also for the purposes of triggering the thirty-day period of time during which Petitioner would have been permitted to seek review of his removal proceedings by the court of appeals.  *See* 8 U.S.C.§ 1252(b)(1).  (Doc. 15, pp. 5-6).  Respondents conclude as follows:

> Here, Ramos-Lara's removal order became final on April 29, 2011, when ICE served him with a final administrative removal order, and a such, his detention is now authorized by 8 U.S.C. § 1231(a).  FARO.  Therefore, his petition challenging his prior 8 U.S.C. § 1226(c) detention is now moot.  <u>See Burkey v. Marberry</u>, 556 F.3d 142, 147 (3rd Cir. 2009).

(*Id.*, p. 6).

We agree with Respondents that, to the extent Petitioner challenges his continued detention by ICE under §1226(c), at the time prior to the issuance of a final removal order, his habeas petition is now moot.

We also agree with Respondents, and find that Petitioner's ninety-day period of post-order detention under 8 U.S.C. § 1231(a)(1) did not commence until April 29, 2011, and that Petitioner is now subject to mandatory detention without a bond hearing during the 90-day removal period. (Doc. 15, pp. 6-7). Petitioner's 90-day removal period will not expire until July 28, 2011, and thus, his present detention without a bond hearing is presumptively constitutionally.

As stated, we agree with Respondents that ICE's April 29, 2011 FARO was Petitioner's final order of removal, and that Petitioner's 90-day period of post-order detention under 8 U.S.C.§ 1231(a)(1) commenced on April 29, 2011. *See Vardan v. Lowe*, 2011 WL 1481356, *3; *Leslie v. Attorney General of U.S.,* 2010 WL 381609, *2 (M.D. Pa.); *Hossain v. Sabol*, 2010 WL 378515, *3 (M.D. Pa.). Thus, Petitioner filed his habeas petition (*i.e.* March 22, 2011) before his removal order became final when ICE issued the FARO (*i.e.* April 29, 2011). Therefore, as discussed below, since Petitioner 's removal order was not final until ICE's April 29, 2011 Order, we find that Petitioner's constitutional challenge to his continued detention is premature since he still within the 90-day removal period.[5]

Consequently, we agree with Respondents that Petitioner's 90-day removal period commenced on April 29, 2011. (Doc. 15, p. 6).

---

[5]As the Court noted in *Leslie v. Attorney General of U.S.,* 2010 WL 381609, *2, n. 2:

> The statute provides: "During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found ... deportable under section 1227(a)(2)...." 8 U .S.C. § 1231(a)(2).

*See also Hossain v. Sabol*, 2010 WL 378515, *2 (M.D. Pa.).

Therefore, we concur with Respondents' contention that Petitioner is still within the 90-day removal period and the 6-month presumptively reasonable period under *Zadvydas v. Davis,* 533 U.S. 678, 700-01 (2001). We also find that while Petitioner claims that his continued indefinite detention by ICE without a bond hearing is unconstitutional, since his 90-day removal period and his 6-month presumptive removal period have not yet expired, the Court should dismiss Petitioner's Habeas Petition because his detention is presumptively reasonable for the 6-month period which has only recently commenced to run on April 29, 2011. In fact, as stated, since Petitioner is still within his 90-day removal period, his Habeas Petition should be dismissed as premature. See *Leslie v. Attorney General of U.S.,* 2010 WL 381609, *2; *Hossain v. Sabol*, 2010 WL 378515 (M.D. Pa.).

In *Leslie v. Attorney General of U.S.,* 2010 WL 381609, *2, the Court stated:

> Under § 1231(a), the Attorney General has 90 days to remove Leslie from the United States after his final order of removal. 8 U .S.C. § 1231(a)(1)(A). The Supreme Court interpreted § 1231(a)(6) to authorize post-removal order detention of an alien convicted of an aggravated felony to a period reasonably necessary to bring about the alien's removal, generally no more than six months.FN3 *Zadvydas v. Davis,* 533 U.S. 678, 700-01 (2001). After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence to rebut that showing." *Id*. at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id*.
>
>> FN3. Section 1231(a)(6) provides: "An alien ordered removed who is ... removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title ... may be detained beyond the removal period...." 8 U.S.C. § 1231(a)(6).
>
> The removal period under section 1231 begins on the latest of (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the alien's removal, the date of the court's final order; and (3) if the alien is confined (except under an immigration process), the date the alien is released from confinement. 8 U.S.C. § 1231(a)(1)(B).

*See also Hossain v. Sabol*, 2010 WL 378515 (M.D. Pa.); *Vardan v. Lowe*, 2011 WL 1481356, *3.

As stated, Petitioner is still within his 90-day removal period and the 6-month presumptively reasonable removal period. See *Leslie v. Attorney General of U.S.,* 2010 WL 381609, *2; *Hossain v. Sabol*, 2010 WL 378515, *3. Thus, Petitioner's present detention by

-8-

ICE is mandatory, and he is not entitled to a bond hearing.

As the Court stated in *Hossain v. Sabol*, 2010 WL 378515, *2-*3:

> At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§ 1231(a)(3) and (6).
>
> In *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the United States Supreme Court addressed the issue of whether § 1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the 90 day removal period or only for a period reasonably necessary to effectuate the alien's deportation. Reasoning that the indefinite detention of aliens "would raise serious constitutional concerns," the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." *Id* . at 2498. The Court asserted that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 2503. To establish uniformity in the federal courts, the Court recognized six (6) months as a "presumptively reasonable period of detention." *Id*. at 2505. The Court further directed that if the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future at the conclusion of the six (6) month period, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. The Court stated that not every alien must be released after six (6) months; but, rather, an alien may still be detained beyond six (6) months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."
>
> Following the Supreme Court's decision in *Zadvydas,* regulations have been promulgated to meet the criteria established by the Supreme Court. *See* 8 C.F.R. § 241.4. Prior to the expiration of the 90 day removal period, the district director shall conduct a custody review for an alien where the alien's removal, while proper, cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(i). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months or refer the alien to the HQPDU for further custody review. 8 C.F.R. § 241.4(k)(1)(ii).

We also find that ICE is not violating Petitioner's due process rights since he just recently became subject to the mandatory detention provisions of 8 U.S.C. § 1231(a)(1) on April 29, 2011, and, as Respondents state, "there is no indication that [Petitioner ] cannot be removed to Mexico," and that "the Government has done nothing to prolong [Petitioner's] removal proceedings, where as [Petitioner] has delayed his removal by challenging USCIS's denials in the Eastern District of Pennsylvania." (Doc. 15, p. 8).

Based on the above, we find no due process violations by Respondents with respect to Petitioner's continued detention by ICE at YCP without a bond hearing. As discussed, Petitioner is still within his 90-day removal period and as such, his habeas petition is premature. *See Leslie v. Attorney General of U.S.,* 2010 WL 381609, *2. Further, at the end of the 90-day removal period, Petitioner will be entitled to a post-order custody review.

In light of the above discussion, we will also recommend that Petitioner's habeas petition be denied. See *Jones v. Duran*, Civil No. 09-2206, M.D. Pa. (4-12-10).

## V.  Recommendation.

Based on the foregoing, it is respectfully recommended that Petitioner Ramos-Lara's Habeas Petition **(Doc. 1)** be denied.

                                                                         s/ Thomas M. Blewitt
                                                                         **THOMAS M. BLEWITT**
                                                                         **United States Magistrate Judge**

**Dated: June 7, 2011**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO RAMOS-LARA, | : | CIVIL ACTION NO. **3:CV-11-0782** |
| Petitioner, | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| THOMAS R. DECKER, et al., | : | |
| Respondents. | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 7, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                                   **s/ Thomas M. Blewitt**
                                                                   **THOMAS M. BLEWITT**
                                                                   **United States Magistrate Judge**

**Dated: June 7, 2011**